J-A16004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES BERRY | : | |
| | : | |
| Appellant | : | No. 543 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006728-2018,
CP-51-CR-0006729-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES BERRY | : | |
| | : | |
| Appellant | : | No. 544 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006728-2018,
CP-51-CR-0006729-2018

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED OCTOBER 3, 2022**

James Berry appeals from the judgment of sentence imposed on his

convictions for two counts of endangering the welfare of children ("EWOC")

_____

[*] Retired Senior Judge assigned to the Superior Court.

and one count of sexual abuse of children.[1] Berry argues the court abused its discretion in relying on impermissible sentencing factors. We affirm.

We previously summarized the underlying facts as follows:

Docket 6728 of 2018 involved [Berry's] conduct involving his younger brother, J.B. (born in 2001), who suffers from intellectual disabilities. When J.B. was a young child, [Berry] sexually assaulted him twice: once forcing J.B. to perform oral sex and once in attempting to engage in anal sex with J.B. When J.B. was approximately sixteen years old, [Berry] used J.B.'s money to hire a prostitute to have sex with J.B. J.B. did not want to participate in the sex act but was compelled by [Berry]. [Berry] recorded the [sex] act.

Docket 6729 of 2018 involved [Berry's] conduct involving his great-nephew, J.J. (born in 2009). When J.J. was seven years old, he went to [Berry's] house for [Berry] to babysit him. While there, [Berry] "unzipped his pants, pulled out his penis, and told J.J. to touch his penis." Trial Court Opinion, 12/5/2019, at 2 (unnumbered) (record citations omitted). "J.J. did touch [Berry's] penis and [Berry] told him to squeeze it. [Berry] then told J.J. he was not doing it right and left the room where J.J. stayed until his mom picked him up later." **Id.** (unnumbered) (record citations omitted).

**Commonwealth v. Berry**, Nos. 2147 EDA 2019, 2148 EDA 2019, 2021 WL 3782689 (Pa.Super. 2021) (unpublished memorandum).

As stated above, a jury convicted Berry of two counts of EWOC—one graded as a third-degree felony, and one graded as a first-degree misdemeanor—and one count of sexual abuse of children. The court sentenced Berry in June 2019. Before imposing sentence, the court stated,

The truly sad part of this is the fracturing of this family. Watching both sides, Mr. Berry's parents on one side and his siblings on the

_____

[1] 18 Pa.C.S.A. §§ 4304(a)(1) and 6312(b)(1), respectively.

other side. The fact that this family hasn't figured out a way to
come together, it exemplifies the harm that was done to these
children. It shows me that not only were [J.B.] and [J.J.] directly
harmed by Mr. Berry's actions, but the victims of his actions
extend far beyond these two little boys.

The fact that I've been watching and reading that [J.B.] is no
longer in his own home and is struggling to stay and become part
of [S.B.]'s home, which is admirable, he is moving forward despite
this victimization. It's a testament to [J.B.]'s strength, and I hope
that he understands that and hears that. His testimony was not
easy to give. He was forced to watch this video multiple times in
this courtroom in front of strangers.

I agree that Mr. Berry has a [c]onstitutional right to try his case,
sir. I do not hold the fact there was a jury trial against him.
However, there was a -- in the process, that doesn't mean we
don't revictimize the victim again. And in this particular case, this
Court as well as the civilians had to sit there and watch as [J.B.]
reacted to that video.

This Court has balanced Mr. Berry's prior record score of zero with
the acts that the jury found him guilty of, the victim impact
statements that have been made on behalf of [J.B.] and [J.J.]. I'm
also taking into account that while this is Mr. Berry's first
conviction, there are previous other contacts. This is not the
anomaly that the zero would foreshadow for me, and I have
concerns about the predatory nature of Mr. Berry's behavior in
taking advantage of these children at a time in which their family
was going through the health concerns of their father.

The fact that [J.B.] does suffer from Autism, and [J.J.] was at a
very tender age at the time of these events that played a role into
the sentencing and given the diminished capacity of the both of
these young boys.

N.T., 6/25/19, at 23-25.

The court imposed three consecutive sentences. On the conviction for

sexual abuse of children, the court imposed a sentence of 60 to 120 months'

incarceration. This was an upward deviation from the sentencing guidelines,

for which the upper end of the aggravate range was a minimum sentence of

48 months. ***See id.*** at 13-15. On the conviction for EWOC as a third-degree felony, the court imposed a sentence of 18 to 36 months' incarceration, which was in the aggravated range of the sentencing guidelines. Finally, on the conviction for EWOC graded as a first-degree misdemeanor, the court sentenced Berry to 12 to 24 months' incarceration, which also fell in the aggravated range. The aggregate sentence was 90 to 180 months' (seven and one-half to fifteen years') incarceration. The court also stated that Berry would be required to register as a sex offender with the Pennsylvania State Police.

In its Rule 1925(a) opinion, the trial court explains that when it announced its decision to deviate from the guidelines, it "was clear in its record which aggravating factors were considered." Trial Court Opinion, 3/19/22, at 6. According to the court, it

> emphasized the potential long-term mental health ramifications to the complainants, the lifelong impact these offenses will have within complainants and [Berry's] family, this court's "concerns about the predatory nature" of [Berry's] behavior, that J.B. was particularly vulnerable to this predatory behavior due to his intellectual disabilities and J.J. particularly vulnerable due to his tender age, the victim impact letter written by [S.B.], J.B.'s sister, and the recommendation of both the prosecution and the child advocates.

***Id.***

Berry filed an untimely post-sentence motion 11 days after he was sentenced. The court denied it, and Berry appealed.

A panel of this court found Berry had waived his discretionary sentencing claims by filing an untimely post-sentence motion. However, we remanded for

further proceedings on Berry's claims related to sex offender registration, which are not at issue in this appeal.

Berry filed a timely Post Conviction Relief Act petition in December 2021, arguing that his counsel had been ineffective for failing to file a timely post-sentence motion. The court granted relief, deemed Berry's post-sentence motion as filed *nunc pro tunc*, and granted Berry leave to file new notices of appeal within 30 days. Berry filed the notices of appeal.[2]

Berry raises one issue: "Did not the lower court err and abuse its discretion in imposing a manifestly excessive aggregate sentence of 7½ to 15 years, where the court upwardly departed from the Sentencing Guidelines and relied upon impermissible sentencing factors, including [Berry]'s election to go to trial and cross examine witnesses?" Berry's Br. at 4.

Berry's issues go to the discretionary aspects of his sentence. We will undertake the review of such issues when (1) the appeal is timely, (2) the issues have been preserved in the court below, (3) the appellant has included a Rule 2119(f) statement in his brief, and (4) the statement raises a substantial question that the sentence violates the Sentencing Code or sentencing norms. ***Commonwealth v. Banks***, 198 A.3d 391, 401 (Pa.Super. 2018); Pa.R.A.P. 2119(f).

---

[2] Although Berry's notices of appeal each reference both of his trial court docket numbers, they are distinguishable, as each lists a different docket number first. They therefore comply with Pa.R.A.P. 341 and ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), which require an appellant to file a separate notice of appeal for each docket. ***See Commonwealth v. Johnson***, 236 A.3d 1141 (Pa.Super. 2020) (*en banc*).

Berry's appeal is timely, his issues have been preserved, and he has included a Rule 2119(f) statement. In the statement, Berry argues the aggregate sentence was manifestly excessive and "unduly harsh given [his] prior record and the crimes for which he was actually convicted." Berry's Br. at 22. He further argues the court "provided inadequate reason for its departure from the guidelines,[3] citing [Berry's] decision to go to trial and cross-examine the complainant, along with his prior arrests." *Id.* at 20. We find these issues raise a substantial question and turn our review to the merits of Berry's claims. *See Banks*, 198 A.3d at 401 ("It is well settled that 'a claim that the sentencing court relied on impermissible factors in sentencing raises

_____

[3] Berry claims his "aggregate minimum sentence was nearly three years longer than a top-of-the-guidelines sentence." Berry's Br. at 27-28. He asserts that if the court had imposed all three sentences at the highest end of the guidelines, he would have been sentenced to minimums of 36 months, 12 months, and nine months, for an aggregate minimum of 57 months, rather than the 90 months imposed by the court. *Id.* at 28 n.8, 36.

However, Berry acknowledges that the guidelines-recommended sentences were, for Sexual Abuse of Children: 22 to 36 months, +/-12; for EWOC as a third-degree felony: three to 12 months, +/-six; and for EWOC as a first-degree misdemeanor: restorative sanctions to nine months, +/-three. *Id.* at 26, 36. The "+" is the amount by which the standard range may be increased to determine the aggravated range. Therefore, sentences at the highest end of the guidelines, in the aggravated ranges, would have had minimums of 48 months, 18 months, and 12 months.

The court imposed minimum sentences of 60 months, 18 months, and 12 months, for an aggregate minimum of 90 months. Had the court sentenced Berry to an aggravated guidelines sentence for Sexual Abuse of Children—*i.e.*, 48 months instead of 60 months—Berry's aggregate minimum sentence would have been one year shorter, not three. *See* Post Sentence Motion, 7/9/19, at ¶ 6 (acknowledging an aggregate sentence in the aggravated range would have been 78-156 months).

a substantial question'" (citation omitted)); ***Commonwealth v. Caldwell***, 117 A.3d 763, 769 (Pa.Super. 2015) (holding substantial question raised where consecutive sentences aggregate to unduly harsh sentence in light of the nature of defendant's crimes).

The Sentencing Code requires the court to impose a sentence that is "consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The court must consider the ranges recommended by the sentencing guidelines, and if it departs from the guidelines, must provide its reason for doing so. ***Id.*** However, the guidelines' ranges are but one factor the court must consider; the court is not bound by the guidelines. ***Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa.Super. 2008).

When reviewing a sentence, this Court must take into consideration "(1) The nature and circumstances of the offense and the history and characteristics of the defendant. (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation. (3) The findings upon which the sentence was based. (4) The guidelines promulgated by the commission." ***Id.*** at 190-91 (citing 42 Pa.C.S.A. § 9781(d)).

We will vacate a sentence that falls outside of the sentencing guidelines if we determine the sentence is "unreasonable." 42 Pa.C.S.A. § 9781(c)(3). We may find a sentence is unreasonable "based upon a review of the factors set forth in Section 9781(d) or based upon a finding that the trial court did

not give proper consideration to the general sentencing standards stated in Section 9721(b)." ***Commonwealth v. McCain***, 176 A.3d 236, 241 (Pa.Super. 2017) (comma omitted). We will not vacate absent a manifest abuse of discretion by the sentencing court. ***Commonwealth v. Knox***, 219 A.3d 186, 199 (Pa.Super. 2019).

Berry argues the court relied on four impermissible factors when imposing sentence, and that these contributed to an excessive sentence. Berry first argues the court imposed a harsher sentence due to his cross-examination of J.B. He maintains that this was impermissible because Berry had a constitutional right to go to trial and cross-examine the witnesses against him. Berry's Br. at 29-31 (citing ***Commonwealth v. Bethea***, 379 A.2d 102 (Pa. 1977)). Berry asserts that at the sentencing hearing, the court stated although it would not fault Berry for exercising his right to a trial, "that doesn't mean we don't re-victimize the victim again. And in this particular case, this Court as well as the civilians had to sit there and watch as [J.B.] reacted to that video." ***Id.*** at 29 (quoting N.T. at 24). According to Berry, the video was retrieved from J.B.'s phone and was of a video playing on Berry's own phone, of J.B. "having sex with a prostitute." ***Id.*** Berry claims he "had the right to cross-examine J.B. about the Commonwealth's central piece of evidence against him, evidence recovered from J.B. himself." ***Id.***

In ***Bethea***, the Supreme Court acknowledged the precept that "[a]n accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead

guilty." 379 A.2d at 104 (citation omitted). The Court held the following statement by the sentencing court made it reasonable to assume that the court had relied in whole or in part upon the defendant's decision to stand trial:

> As far as I'm concerned, even though it is your first offense I think substantial punishment must be inflicted here. If you had pled guilty, perhaps you were involved, there is no question in my mind, but had you pled guilty it might have shown me the right side of your attitude about this, but you pled not guilty, fought it all the way, and the jury found you guilty, and I'm going to sentence you at this time.

*Id.* at 105–06.

In the instant case, the court stated at sentencing, "[I]n the process [of going to trial], that doesn't mean we don't revictimize the victim again." N.T. at 24. In other words, the court observed that trial process revictimized the victim, J.B. The court went on to state, "And in this particular case, this Court as well as the civilians had to sit there and watch as [J.B.] reacted to that video." *Id.* The court also stated, "[J.B.]'s testimony was not easy to give. He was forced to watch this video multiple times in this courtroom in front of strangers." *Id.*

However, unlike the comments in *Bethea*, the instant court's comments do not express that the court increased its sentence to punish Berry for standing trial or cross-examining J.B. To the contrary, the court explicitly stated, "Berry has a Constitutional right to try his case, sir. I do not hold the fact there was a jury trial against him." N.T. at 24.

In relaying the extent to which it observed J.B. suffer during trial, the court acknowledged the obvious and devastating impact Berry's crimes have had on J.B. The court repeatedly noted the extent to which the victims in this case, and their family, suffered enduring harm. *See* N.T. at 23 (stating the ongoing rift in the family following Berry's crimes "exemplifies the harm that was done to these children"), 24 (noting J.B. "is moving forward despite this victimization," and stating that the court relied on the victim impact statements); *see also* Trial Ct. Op. at 6 (stating that in announcing sentence, it "emphasized the potential long-term mental health ramifications to the complainants" and "the lifelong impact these offenses will have within complainants and [Berry's] family").

The court was required under 42 Pa.C.S.A. § 9721(b) to consider the impact of Berry's crimes on the lives of his victims and the community. Its acknowledgment that the victims were still suffering throughout the trial process is not a basis on which to conclude that the court increased Berry's sentence based on his decision to stand trial, especially in light of the court's explicit statements to the contrary.

Next, Berry argues the court abused its discretion by considering his prior arrests. He claims that although the court noted his prior record score was zero, it also noted "there are previous other contacts. This is not the anomaly that the zero would foreshadow for me." Berry's Br. at 32 (quoting N.T. at 24-25). Berry asserts "any adverse reliance upon mere arrests [by a sentencing court] violates the due process guarantees of the state and federal

constitutions." *Id.* He argues that a sentencing court must explicitly recognize that a prior arrest is not the equivalent of a conviction beyond reasonable doubt. *Id.* at 33.

A court may consider a defendant's prior arrests, so long as it recognizes those arrests have not resulted in convictions. *Commonwealth v. Carr*, 262 A.3d 561, 570 (Pa.Super. 2021). Here, the court noted that the previous "contacts" Berry has had with law enforcement did not contribute to the calculation of Berry's prior record score. The court therefore acknowledged that these were not prior convictions. *See* 204 Pa. Code § 303.4 (stating that prior record score "is based on the type and number of prior convictions"). Moreover, a record of prior police involvement goes to Berry's amenability to rehabilitation, a factor the court must consider under 42 Pa.C.S.A. § 9721(b). *See Commonwealth v. Goggins*, 748 A.2d 721, 732 (Pa.Super. 2000). We discern no abuse of discretion.

Third, Berry argues the court abused its discretion in considering the gravity of his crimes when departing from the guidelines, because this was already accounted for by the offense gravity score. He claims the court's statement that it "balanced Mr. Berry's prior record score of zero with the acts that the jury found him guilty of" means the court double-counted the offense gravity score. Berry's Br. at 34 (quoting N.T. at 24).

In departing from the guidelines, a court may not double-count factors that were already contemplated in the calculation of the guidelines, including the offense gravity score and prior arrest record. *Goggins*, 748 A.2d at 732.

- 11 -

However, the court may use information going to the offense gravity score and prior arrest record "to supplement other extraneous sentencing information." ***Commonwealth v. Simpson***, 829 A.2d 334, 339 (Pa.Super. 2003). For example, the court may consider whether the case "is compellingly different from the 'typical' case of the same offense," or if the information reflects upon the defendant's character. ***Commonwealth v. Robertson***, 874 A.2d 1200, 1213 (Pa.Super. 2005).

Even if the court relies on factors that were already considered in formulating the guideline range, "there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." ***Sheller***, 961 A.2d at192. The court simply may not use the factor as the sole reason for increasing a sentence. ***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa.Super 2006); ***see, e.g., Sheller***, 961 A.2d at 192 (finding even if court had considered factors going to the gravity of the offense when upwardly departing from the guidelines, the court recited proper factors it took into consideration, such as impact of the crime on the relatives of the victim).[4]

Here, the court did not focus solely on the nature of Berry's crimes when justifying its departure from the guidelines. Rather, the court stressed its reliance upon other factors—namely the impact of the crimes on the victims

---

[4] ***See also Simpson***, 829 A.3d at 339 ("The trial court considered not only Simpson's prior record but also the impact on the victim, the threat to the community, lack of successful rehabilitation and the fact that Simpson was on probation and under supervision at the time of the offense").

and their family. *See* N.T. at 23-25; Trial Ct. Op. at 6. The court also considered the "predatory nature" of Berry's behavior, in light of the family's preoccupation with their ailing father at the time, and the diminished capacity of Berry's victims—factors that reflect on Berry's character and amenability to rehabilitation. *See* N.T. at 23-25; Trial Ct. Op. at 6. These considerations were proper, and the resulting sentence was not an abuse of discretion. *Sheller*, 961 A.2d at 192; *Shugars*, 895 A.2d at 1275; *Robertson*, 874 A.2d at 1213; *Simpson*, 829 A.3d at 339.

Finally, Berry argues the court abused its discretion by considering the "fracturing" of his family following his crimes. Berry's Br. at 34-35 (quoting N.T. at 23). Berry argues the court should not have blamed him for his family's behavior. Berry cites *Commonwealth v. Basinger*, 592 A.2d 1363, 1367 (Pa.Super. 1991), in which he claims this Court held it "impermissible to impose a more-harsh sentence on [a] DUI defendant because an intoxicated pedestrian jumped in front of his vehicle." Berry's Br. at 35.

The court was required to consider the impact of Berry's crimes on "the community." 42 Pa.C.S.A. § 9721(b). It therefore did not abuse its discretion when considering the fallout faced by Berry's family. Furthermore, the "fracture" within the family was an unavoidable result of Berry's abuse of his young family members. We therefore find this case distinguishable from a case where the negligence of an intoxicated pedestrian may have contributed to an accident, and thus, to the resulting impact felt by the community.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2022